We're ready to hear oral argument now in the case of United States against vines. Excuse me, Judge Easterbrook, Mr. Ekman is upside down. I can. Does that fix it, Your Honor? Yes, yes. And I cannot see. OK, thank you, Mr. Rosen. Can you see me here, Mr. Rosen? I can see you, Your Honor. Mr. Rosen. Did somebody call the case? Yes. May it please the court. Mark Rosen appears on behalf of the defendant appellant, Elijah Vines. Can you hear me, Your Honor? We. Mr. Rosen, we can hear you, but the picture is scarcely moving. There may be a bandwidth problem. Oh, OK. Is there Mr. Rosen? I think we would. I think we would all be better off if you just turned off the camera and appear by audio. That may work better. It said host to stop the video. OK, Mr. Rosen, please proceed. Thank you, Your Honor. May it please the court. Mark Rosen appears on behalf of the defendant. Elijah Vines, as you know, I've addressed a number of appellate issues in my briefs. First of all, I think it's pretty clear from the law that Judge Sweeney legally allowed Agent Hardy to testify about the credibility of basically the victim, GMC. I would note that the state has the government has relied upon the case US versus Vest. One thing that distinguishes Vest in this case and materially distinguishes Vest is that in that case, the judge told the jury that an expert cannot vouch for the credibility of a witness. And I don't know if it's clear from my briefs, but that did not occur here. The only instruction that occurred here was clearly the general one about you don't have to just listen to an expert. But as we know from Benson and Azure, that doesn't work. That basically tells, as we read in those cases, when you have an expert talk about the credibility of a person that basically stamps a stamp of approval, basically told the jury. I mean, she this GMC had lied to a number of people. Not only had she lied to the police after her arrest and she'd lied, but she'd lied before that. She'd lied to her cohort A.D. about her age, her name. She had lied to her foster parents. Max. Mr. Rosen. Yes. I don't understand the source of the rule that you assert that no expert may give testimony that bears in any way on witness credibility. Rule of Evidence 704 bans expert testimony on the ultimate issue. And on the defendant's state of mind. But it doesn't ban any other kind of expert testimony. Does this. Are you arguing that this testimony comes within the scope of Rule 704? I'm arguing that rule that what. I don't know if Rule 704 talks about the X, the credibility. What I'm saying is that you've got the case out of the Seventh Circuit that says that experts cannot vouch for the credibility of another witness. And I think we we'd relied upon that both at the trial level and before. I mean, let me be I just want to be sure I understand your argument. You are not arguing based on Rule 704. You contend that this court has. Extended, contradicted, done something else with the rules of evidence. They are not statutes. They are, and I agree with that, but I'm arguing that as you this court has done in both Benson and Azure, they said that experts cannot vouch for the cannot talk about and give the opinion about the credibility of a witness. And that's what happened specifically in those cases, even though Rule 704 was present at the time. You know, but, but, but in, but in Benson, the expert testified as to issues beyond his area of expertise. He drew inferences that he was no more qualified to draw than the jury would be. He based his opinion on his own credibility, determination of, of, of, of, of the witnesses. Can you point to any testimony by the witness here that you believe went beyond his area of expertise? Or applying this to the very specific details of, of, of this case? No, I cannot point to anything that specifically related to GMC in this case. No, that is, that is true. That is something that's there, but she was allegedly a sex traffic victim. And he basically talked about how sex traffic and victims are, you know, basically lied to the police all the time. She, he had never met GMC. He didn't know her. She was a liar. She had not only lied to the police, but she'd lied to other people. And what Hardy had basically told the jury to do was just disregard every, every lie she ever made, period. And that is that, that, that just basically violates Benson and the jury, Your Honor. And I think that that was illegal under the situation. And I think it just went way too far. Other courts have said that every case that the government has cited has talked about that these sort of witnesses can talk about practices. What happens, how these things work out, but not about credibility. And I think one thing that I do remember and note is that before the district court, Judge Sweeney, the government had provided a number of cases. One of the cases that they had provided, which was Jackson out of Michigan. In that case, specifically, the judge only allowed that expert to testify as to practices of pimping, not as to, and he specifically said, that's all you can testify to. Because basically what the judge, and that is the case law. And that's the case law that the government cited in its brief was a sort of, well, general practices, sort of, which we're not objecting to clearly because that's what the expert talked about. But to sit there and get into, well, you know, you can't believe anything, any lies she said, because that's all, you know, that's what they do. So therefore, when she tells you she's telling the truth now that you got to buy that, even though she had a history of lying before, during, and after this case to multiple individuals. And our lives were just so prevalent and she was just a categorical liar, he just basically told the jury, you know, disregard all our lives ever and, you know, believe what she's telling you now and that is based upon Benson in Missouri is clearly illegal. If the court wants to go into that I can move into the iPhone or one of the other issues your honor. Well, I can get into the iPhone argument too. I think that the government illegally the police officers that came to SS his house illegally sees the fire that that phone. I think she was basically. She had no apparent or actual authority to give that phone to anybody. She had basically Mr. Vines had basically told her on the phone and the police knew about it while he was in jail on recorded phone lines that she was not going to give her a password. She told the police. I don't have the password to this and if you use this more than twice it'll, it'll get rid of the, it'll delete everything. And that's what she told the police, and that under right and you see, he gave the iPhone to his girlfriend. And so he ceded physical position of the phone to her. And when you do that, you take a risk that that person will give the phone to someone else. Well, I understand that, but the fact of the matter is based upon right where, where the family and right had a phone, which was basically, but they were denied access to the phone password, all that sort of information. She would, they were judge Sykes in that case specifically said that does not give the apparent authority of that phone. Well, but, but, but the government didn't rely on her consent to justify the search of the phone. They obtained a warrant for the search. So, so the arguments about her inability to consent are, are, are probably irrelevant. Except for the fact that they never, the only way they got the phone was because she gave it to them. If he hadn't given them the phone physically given them a phone, which he didn't have authority to do. Clearly, they wouldn't have been able to get the phone. They never got a warrant for the phone. They would never have been able to search the phone. And I think clearly the phone was very, very harmful to Mr. Vines's case. I think the government indicates in its brief, they rely the government use that phone to basically iCloud Facebook accounts. There was visual imaging on the phone, email accounts, all sorts of things that were on the phone were designed to basically inculcate my client. And I think that that is basically was an illegal search and seizure of the iPhone. I don't know if anybody has any more questions about the iPhone or. What was he supposed to do with it? He didn't want it. She got the phone. Are you saying that anyone coerced her to give it up or. Well, that's something we argue. I'm sorry, Your Honor. No, that's what I'm asking. Would she achieve? Is there any problem with her giving the phone to someone else? Well, I think she. Pardon me? In her mind. I don't think she had the apparent authority to give the phone to anybody else. He wanted her to keep it until he got out of jail. And so basically by denying the password information to her, he he basically said, you are you know, that that's it. You can't use this. You can't do anything with this. She did not have apparent authority to do anything with it. The police officers basically they were with her for 45 minutes, kept badgering her, basically wouldn't let her go. But she didn't have the authority to give the phone up. She just didn't have the authority. They didn't have the warrant. They came in basically to in tag team her. But she didn't have authority to give the phone up. She was basically told you cannot have anything to do with this phone. Yet she gives it up because the police officers give it to her. I think that's a difference between some of the cases. The Sweeney and Judge Sweeney in the district argued the case of James U.S. versus James. In that case, the court of appeals said specifically the mother had the right to give the the safe up to the police because she had been given authority to do so. She had the keypad. She gave the keypad information, the combination to the police officers in that case so that they could get the phone. They get the access into the safe that specifically and categorically did not happen here. And I think as the Seventh Circuit said in right when that sort of conduct occurs where this is specifically told you cannot have the password information, you cannot do that. That case, the Seventh Circuit dealt with the issue of the phone and the court said she did. The people did not have the apparent authority to do anything with the phone. And I think that's clearly what happened here. These people, the girlfriend did not have any authority to give that phone up. I mean, if they come back with a warrant or something like that, that might be different. But they never bothered to do that. And so we can't even approach it. They would have that problem caused to get a warrant. So I think that the search and the seizure of the iPhone was clearly illegal. Rosen, you are now into your rebuttal time. I'll save my remaining time. Thank you, Ron. OK, thank you, Mr. Rosen. Mr. Ekman, now that you're vertical rather than sideways. Yes. And thank you to Judge Rovner for pointing that out. I appreciate it. Thank you. And may it please the court. My name is Adam Ekman. I represent the appellee in this case, the United States of America. Now, Mr. Vines raises four issues on appeal, all of which essentially argue that the district court erred in denying his pretrial motions. The district court did not err in denying those motions and should be affirmed in all four issues on appeal. But during his oral argument, he only touched on two. So unless the court objects or has any questions, I'll just address those two in my oral argument. Well, I do have one question for you, and that is regarding the inevitable discovery argument, because I was wondering what evidence that's independent from GMC's statement linked Mr. Vines to the Facebook account and provided a reason to believe that the Facebook account would contain evidence of the crime. Yes, Your Honor. The independent evidence was once they eventually got his phone, which he addressed earlier in his argument, that there was evidence that phone had been used to access Facebook, had been accessing iCloud and had been accessing Backpage.com, which is the website he used to traffic GMC in this case. They also had recorded jail calls of him trying to traffic GMC while he was in jail, saying that she should not be having sex for free and trying to get one of his friends to pimp her out. And he also mentioned iCloud during those recorded jail calls. So with these jailed calls and with the cell phone, the police would have had ample evidence to search these accounts. And of course, they said in their sworn affidavits that they are very familiar with these kind of crimes and Facebook is commonly used when sex trafficking, especially sex trafficking minors. Wow. So returning to what my opposing counsel spent the bulk of his argument on, he argues that the district court erred in denying his motion in limine seeking to prohibit Agent Hardy from testifying as an expert at trial. And I think this analysis is most helpfully done, and I think it would address Judge Easterbrook's concerns if we stay grounded in what rule governs this issue. And that's rule 702 of the federal rules of evidence. That's the rule that says who can testify as an expert at trial. And under that rule, an expert can testify at trial as long as they are qualified as an expert and their scientific, technical or other specialized knowledge can help the jury understand an issue of fact or understand the evidence of this case. So Agent Hardy was allowed to testify at trial because he met those requirements. First, he is qualified as an expert in the sex trafficking industry. His testimony at trial demonstrated that clearly, and he has had numerous other cases in which he was admitted as an expert in that area. So that's his area of expertise. Once he began testifying, he testified within his area of expertise. He explained how the sex trafficking industry works, how sex traffickers recruit victims, how they use those victims to make themselves money, and how they manipulate these victims into feeling trapped and feeling like they can't escape. The problem with Benson, as pointed out earlier, is that the IRS agent in that case testified outside the area of his expertise. In that case, he was called to testify about whether certain items of the defendant's income qualified as gross income. And he offered conclusions that had nothing to do with his area of expertise, which was tax law. And he essentially just assumed other trial witnesses were telling the truth. The effect of that IRS agent's testimony in Benson was he effectively told the jury which witnesses to believe, and that was not permissible. But absolutely nothing like that happened here with Agent Hardy. All of his conclusions did not rely on any testimony of anyone else, nor did they even allude to the testimony of anyone else who testified at trial. His testimony was just a standalone explanation of the sex trafficking industry in general. He even prefaced what he said by saying he had not reviewed any of the evidence in the case, and he had not interviewed anyone related to the case. He didn't know anyone in the case. So there's no way a jury could have somehow thought that he was telling them which witnesses to believe. But to address the point opposing counsel brought up, which is even if he did, this would have been a harmless error because the court instructed the jury. He told them, you alone decide issues of credibility. And he did include a specific instruction on Agent Hardy's testimony. This is at the trial transcript, pages 1009 through 11. And he told them, you alone decide how credible the jury these witnesses are and treat Agent Hardy's testimony exactly as you would treat anyone else. So they were specifically instructed on Agent Hardy. So I think my opposing counsel conceded that there's nowhere in this trial transcript that he can point to where exactly Agent Hardy testified to anyone's credibility, and that's because he didn't. Agent Hardy did not vouch for anyone or did not assume anyone was telling the truth or proffer conclusions that assumed they were telling the truth. Therefore, the district court should be affirmed on this issue, and the motion in limine, the district court correctly denied that motion in limine. Turning to the second issue opposing counsel raised in his oral argument, he argues that the district court should have granted his motion to suppress evidence collected from his iPhone. Now, I think this issue would be clarified if we kept track of what exactly we're talking about here. And there are two police actions that are relevant to this issue. First, the police seized the cell phone after Ms. Smoot voluntarily gave it to them. Then the police searched the cell phone after getting a search warrant. Now, I don't believe my opposing counsel is challenging the search, and I don't think he could because that was done pursuant to a valid search warrant. And there's no argument that they didn't have probable cause or that search warrant was unlawful in any way. I believe he's only arguing that the seizure was unlawful and the subsequent search was fruit of the poisonous tree. That argument is equally untenable, and I think you're exactly right in these point you made, Judge Rovner, about the difference between a seizure and a search. And the way the courts look at this issue, as the court did in James and as Judge Rovner, you just alluded to in your prior statements, they ask, what risks did Mr. Bynes assume? And the facts here are he voluntarily gave his phone to Ms. Smoot. Ms. Smoot then spoke with the police, and she voluntarily gave it to the police. That falls comfortably within the third-party consent exception to the Fourth Amendment. So no search warrant was needed, and the search was perfectly lawful. I think the issue gets muddled by my opposing counsel when he tries to combine these issues of a search and a seizure. But really, they're two distinct things. Of course he did not assume the risk that someone would search the contents of his phone. That's because he had the phone locked, and he did not give Ms. Smoot the passcode to his phone. So he did not assume the risk that someone would be perusing his phone without a search warrant. That's exactly why the police here obtained a search warrant before searching the phone. Now, of course your opponent argued that the search warrant affidavits contained a large number of misrepresentations and internal contradictions. To be clear, Your Honor, I think that's kind of mixing two issues. He has not challenged the search warrant that was used to search his cell phone. He was challenging the search warrants that were used to access his Facebook and iCloud accounts. Those were the search warrants we discussed earlier. Well, that led from them being able to search the phone. That's how they found, other than her saying, you know, that he had a Facebook account. Yes, Your Honor. Yeah, anyway, okay. Yes, Your Honor, but to be clear, the search warrants that were used to search his cell phone after they seized it, I don't believe opposing counsel has raised any issues with those probable cause in those search warrants or said that they contained misleading statements or anything like that. So once they had those search warrants, he had assumed the risk by giving possession of his cell phone to his girlfriend. And there's nothing in the record that he said, don't give this to anyone else or don't give this to the police or go throw this in the lake or burn this. He gave it to her without restrictions. So he gave possession of the phone to his girlfriend. In doing so, he assumed the risk that she could give it to somebody else. She could give it to her friend, she could give it to her mother, or she could give it to the police. And that's exactly what she did here. She was met with the police, they spoke with her, and she voluntarily gave them the phone. Now I think in his oral arguments there were some allegations or at least allusions that she may have been coerced in giving them the phone. And there's absolutely nothing in the record indicating that. I think my opposing counsel said they wouldn't let her go until she gave it to them. Again, nothing in the record saying that she was somehow confined against her will until she gave them the phone. The only thing in the record that possibly suggests that is the fact that she was not told she had the right to refuse consent. But as the Supreme Court said in Sack and Cloth, that alone cannot make a consent involuntary. So to hold otherwise would run in the face of Sack and Cloth and dozens of other cases from that court and the Seventh Circuit that hold that a consent can be voluntary even if they're not told they have the right to refuse consent. So therefore, because she voluntarily gave the phone to the police, this falls within the third-party consent exception to the Fourth Amendment. The police taking this phone, just seizing it, was perfectly legal and was perfectly lawful without a search warrant. Therefore, the district court should be affirmed on that issue as well. That leaves the other two issues raised on appeal that were not addressed in oral argument. I'd be happy to answer any questions the court may have about those issues. Otherwise, the United States will just rest on our briefs. Seeing no question. Thank you very much, Mr. Eichmann. Anything further, Mr. Rosen? A few things, Your Honor. Just because I didn't argue the two other issues presented doesn't mean we're not litigating them before the court. It's just that we just ran out of time. As far as the inevitable discovery, as Judge Rovner said, his iPhone clearly was linked to the iCloud and Facebook accounts. So that was basically clear. It had information on those accounts in the phone itself to get to the iCloud and Facebook accounts, because I know Judge Rovner raised that issue with the government, raised that issue in his brief about inevitable discovery with respect to the warrants, the other warrants that Ryan talked about originally. Judge Hardy, in this case, I recall reading the jury instructions. I don't remember. They gave the general expert opinion that you can disregard, but I don't remember anything in there. The court, I'm sure, could do it where they told them that they cannot talk about the credibility of a witness. Now, I know that the issue in Benson was a little different where they talked about this individual here, the individual at issue in Benson. But Judge Hardy talked about what was basically allowed to talk about in all of his other cases where he was allowed to talk about, which is basically practices and pimping and general methods and stuff like that. What crossed the line here, because clearly he can say, well, the government's saying, well, he wasn't talking about GMC, but it was pretty obvious it was about GMC, somebody he'd never met before, and was talking generally telling the jury you do not have her credibility is shot because of the practices. And whatever lies she told you was because of something that had happened during the pimping process. And that is clearly illegal because that's not the facts and that's not the basis of that is credibility and vouching for the credibility. And Azure also talked about that, too, where an expert was talking about the credibility of GMC. I know the government say, well, he wasn't Hardy wasn't referring to a single individual, but it was clear it was GMC. And he basically told the jury all the lies she's ever given are disregarded, disregard those because it was because of pimping, which is telling you now is the truth. And that is not allowed. And that's what the district court in Jackson, the Michigan case of Jackson, basically said. He was telling her he was telling the jury who to believe. As far as the iPhone is concerned, I understand that there's a difference between the warrant and the seizure of the phone. That's I clearly understand that they may have had a valid warrant to get the phone once they seize the phone. The issue becomes was they did not have authority. I'm sorry. Strike that. This SS did not have the authority, either apparent or actual authority to give up that phone to the police. And the conduct was basically you hold it. The phone. He had told her that on jail for cause. I'm not giving you the password to this phone. And the police knew about it. And that's the difference between the government wants to mix these issues up, but it's not mixable. The issue is that she did not have the authority. And James holds for that position that she did not have the authority to give the phone up or apparent or actual authority based upon his intent to keep her from having that authority. Mr. Bynes intent to keep her from having that authority. And the fact in James, there was no that's one of the cruxes of James was that James had never. There was no factual basis in James to say that his mother did not have the authority to give up the safe to the police so that they could later execute the search warrant. We're talking about the seizure here. And in James, she did have the authority. She had the password and the keypad information here. It was specifically told not to. And with that, Your Honor, I thank you for your time and attention in this case. Thank you, Mr. Rosen. The court appreciates your willingness to accept the appointment in this case and your assistance to the court as well as to your client. The case is taken under advisement.